## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT C. CARTER**                                          **CIVIL ACTION**

**VERSUS**                                                            **NO. 17-795**

**DARREL VANNOY, WARDEN LSP**                      **SECTION: "H"(3)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Robert C. Carter, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola Louisiana. On July 21, 2010, Carter was charged in the Parish of Jefferson for two counts of aggravated criminal damage to property.[1] The state eventually entered a *nolle prosequi* as to one count.[2] Carter was tried before a judge as to the remaining count and was found guilty.[3] The court sentenced Carter to a term of imprisonment of ten years at hard labor to run concurrently with any other sentence he was serving.[4]

---

[1] St. Rec. Vol. 1 of 10, Bill of Information, 7/21/10.
[2] St. Rec. Vol. 1 of 10, Minutes, 2/23/11.
[3] Id.
[4] St. Rec. Vol. 1 of 10, Sentencing Minutes, 3/30/11.

The state filed a multiple bill charging Carter as third felony offender.[5] At a hearing on July 7, 2011, the state amended the bill to charge Carter as a second offender and, after hearing the evidence, the state trial court found Carter guilty.[6] The court vacated the original sentence and sentenced Carter at a term of imprisonment of twenty years at hard labor.[7] The court denied Carter's motion for reconsideration of sentence.[8]

Carter filed a direct appeal to the Louisiana Fifth Circuit, alleging the following claims: (1) the trial court erred in imposing an unconstitutionally excessive sentence; (2) the failure of trial counsel to file a motion to reconsider sentence constituted ineffective assistance of counsel and should not preclude the appellate court from considering the constitutionality of the sentence.[9] Carter, through counsel, filed a supplemental brief alleging the following claims: (1) he did not knowingly and intelligent waive his right to a jury trial; (2) the trial court erred in proceeding with a bench trial; (3) he had a right to resist arrest; and (4) insufficient evidence supported his conviction.[10] On May 31, 2012, the Fifth Circuit conditionally denied petitioner's appeal but remanded the case for an evidentiary hearing to determine whether petitioner knowingly and intelligently waived his right to a jury trial.[11]

On August 8, 2012, the state trial court held an evidentiary hearing after which it found that Carter knowingly and intelligently waived his right to a jury trial.[12] On his second direct appeal, Carter alleged that the trial court erred in determining the evidence was sufficient to

---

[5] St. Rec. Vol. 1 of 10, Multiple Bill, 3/30/11.
[6] St. Rec. Vol. 1 of 10, Multiple Bill Hearing Minutes, 7/7/11.
[7] St. Rec. Vol. 1 of 10, Multiple Bill Hearing Minutes, 7/7/11.
[8] St. Rec. Vol. 1 of 10, Motion for Reconsideration of Sentence, 7/13/11; Order, 7/14/11.
[9] St. Rec. Vol. 4 of 10, Appeal Brief, 11/KA/0758, 8/5/11.
[10] St. Rec. Vol. 4 of 10, Supplemental Appeal Brief, 4/9/12.
[11] State v. Carter, 96 So.3d 1283 (La. App. 5th Cir. 2012); St. Rec. Vol. 4 of 10, 5th Cir. Order, 11-KA-758, 5/31/12.
[12] St. Rec. Vol. 1 of 10, Minutes, 8/8/12; St. Rec. Vol. 5 of 10, Hearing Transcript, 8/8/12.

demonstrate that Carter made a knowing and intelligent waiver of his right to a jury trial.[13]  The Louisiana Fifth Circuit denied petitioner's appeal finding his claim to be meritless.[14]

Carter then filed a writ application to the Louisiana Supreme Court which was denied on February 14, 2014, without explanation.[15]  Carter did not file an application for writ of certiorari with the United States Supreme Court.

On May 18, 2015, petitioner's current retained counsel filed an application for post-conviction relief with the state district court in which he raised the following claims: (1) ineffective assistance of counsel; (2) denial of his Sixth Amendment right to a jury trial; (3) he was convicted utilizing hearsay statements by the confidential informant and his attorney was ineffective for withdrawing the motion to reveal the identity of the confidential informant and in failing to object to the hearsay testimony; (4) illegal warrantless arrest in violation of the Fourth Amendment; (5) his conviction was obtained in violation of Brady and its progeny and was "exacerbated by ineffective assistance of counsel"; (6) he was punished for exercising his right to trial and his habitual offender sentence violated the Eighth Amendment.[16]  Petitioner filed a supplemental brief and a motion for new trial based on newly discovered evidence in the form of photographs from the time of his arrest.[17]  The state district court construed the motion for new trial as an application for post-conviction relief.[18]  On January 28, 2016, the state district court denied petitioner's application.[19]  The Louisiana Fifth Circuit Court of Appeal denied petitioner's application for supervisory writ finding petitioner failed to meet his burden of proof under Strickland v.

---

[13] St. Rec. Vol. 5 of 10, Appeal Brief, 12-KA-932, 1/11/13.
[14] State v. Carter, 121 So.3d 149 (La. App. 5th Cir. 2013); St. Rec. Vol. 5 of 10, 5th Cir. Opinion, 12-KA-932, 2/22/13.
[15] State v Carter, 132 So.3d 411 (La. 2014); St. Rec. Vol 8 of 10, La. Supreme Court Order, 2013-K-1853, 2/14/14; Application for Writ, 13 K 1853, 7/30/13.
[16] St. Rec. Vol. 2 of 10, Application for Post-Conviction Relief, 5/18/15.
[17] St. Rec. Vol. 2 of 10, Supplemental Memorandum of Law, 7/22/15; Motion for New Trial Newly Discovered Evidence, 7/22/15.
[18] St. Rec. Vol. 2 of 10, Order, 8/24/15.
[19] St. Rec. Vol. 13 of 10, Order, 1/28/16.

Washington, 466 U.S. 668 (1984), his claims that he did not knowingly and intelligently waived his right to a jury trial and that his arrest was illegal were procedurally barred under La. Code Crim. P. art. 930(A), his excessive sentence claim was not cognizable under La. Code Crim. P. art. 930.3 and Melinine v. State, 665 So.2d 1172 (La. 1996), his motion for new trial was untimely, and the trial court did not err in finding that petitioner did not prove that the state withheld photographic evidence from the time of his arrest.[20]  The Louisiana Supreme Court denied petitioner's application for review finding he failed to show ineffective assistance of counsel under Strickland, he failed to show the state withheld exculpatory evidence in violation of Brady, his sentencing claim was not cognizable, and the remainder of his claims were repetitive.[21]

Petitioner filed the instant counseled federal application seeking habeas corpus relief alleging the following claims: (1) ineffective assistance of counsel; (2) denial of the right to jury trial; (3) he was seized without probable cause or reasonable suspicion in violation of the Fourth Amendment and his "right to resist unlawful arrest" was not honored; (4) his conviction was obtained in violation of Brady, Napue, and the Fourteenth Amendment; (5) he was "punished for not pleading guilty" to the multiple offender bill and his sentence is grossly disproportionate under the Eighth Amendment.[22]

The state does not challenge the timeliness of petitioner's application.  The state argues that petitioner failed to exhaust some of his claims related to ineffective assistance of counsel, unlawful arrest, and excessive sentence and that those claims are procedurally barred.  It further

---

[20] St. Rec. Vol. 7 of 10, 5th Cir. Order, 16-KH-251, 5/17/16.
[21] State ex rel. Carter v. State, Case No. 2016–KP–1149, 2018 WL 460284 (La. Jan. 12, 2018); St. Rec. Vol. 9 of 10, La. Supreme Court Order, 2016-KP-1149, 1/12/18; La. S. Ct. Writ Application, 16 KP 1149, 6/16/16; St. Rec. Vol. 9 of 10, La. S. Ct. Writ Application (con't), 16 KP 1149, 6/16/16.
[22] Rec. Doc. 3.

contends that the illegal arrest claim is not cognizable. The state argues that all the claims lack merit.[23]

The post-conviction pleadings filed by petitioner's counsel in the state courts as well as his habeas petition are disorganized and convoluted making it difficult to determine what claims have been exhausted.. However, a federal court has the authority to deny habeas claims on the merits, regardless of whether petitioner exhausted state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir.1998); Woods v. Cain, Civil Action No. 06–2032, 2008 WL 2067002, at *8 n. 8 (E.D. La. May 13, 2008). In that all of petitioner's claims are clearly meritless, the undersigned recommends that they simply be dismissed on that basis in the interest of judicial economy.

### Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

---

[23] Rec. Doc. 15.

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that*

*there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White, 134 S. Ct. at

1701.

### Facts

On first direct appeal, the Louisiana Fifth Court of Appeal summarized the facts of this

case as follows:

> On June 8, 2010, Jefferson Parish Detectives Mary Layrisson, Sean Cursain, and Lonnie Senior participated in a narcotics investigation resulting from a confidential informant's tip that a drug transaction would occur in the Rouse's parking lot at the intersection of Airline Drive and Labarre Road.  The informant disclosed that on June 8, 2010, a black male "with dreads" would arrive at the parking lot between 6:15 p.m. and 6:45 p.m. in a grey colored vehicle with unique colored designs on its side.  On that date, the detectives set up surveillance in the parking lot and waited for the subject to arrive.  The testimony reflects that during the time frame provided by the informant, a black male with dreads arrived driving a grey vehicle with unique colored designs on its side.  The vehicle circled the parking lot and eventually pulled into a parking space.  Detectives Cursain and Senior coordinated their approach to conduct an investigatory stop, whereby Detective Cursain would park in a designated parking spot behind the vehicle and Detective Senior would park in front of the subject vehicle to prevent escape.  Both detectives testified that they activated the lights on their unmarked patrol units and approached the subject vehicle with their guns drawn.  Detective Senior ordered the defendant to exit the subject vehicle.  Detective Senior testified that he made eye contact with defendant after exiting his patrol unit and felt compelled to retreat to his unit.  Immediately thereafter, the subject vehicle attempted to escape by hitting Detective Senior's unit and subsequently accelerating until Detective Senior's unit was pushed back enough to allow defendant to escape.  Detective Cursain testified

that he prepared to fire into the subject vehicle but refrained from shooting when he noticed a small child in the car.  At that point, Detective Cursain and the other officers began a pursuit of the subject vehicle, which traveled down Labarre Road. The subject vehicle came to a stop near Metairie Road and defendant exited the vehicle and fled on foot.  Nikkia Nickles, defendant's girlfriend, and their two year old son remained in the subject vehicle.   After a perimeter of the area was established by officers, defendant was located hiding in a garbage can in a nearby backyard and apprehended.[24]

### Petitioner's Claims

### Ineffective Assistance of Counsel[25]

Petitioner raises various claims of ineffective assistance of counsel in his petition.[26]  While it is difficult to identify petitioner's arguments, it appears that petitioner contends his trial counsel did not know how to practice criminal defense and did "virtually nothing" to defend him, he failed to secure discovery, withdrew a motion to reveal identity of the confidential informant and did not object to hearsay testimony at trial, could not conduct a jury trial due to his health, "failed at sentencing", and failed to file a motion to reconsider sentence.  In denying his application for post-conviction relief, the trial court found petitioner's ineffective assistance of counsel claims to be meritless.[27]  The Fifth Circuit found petitioner failed to meet his burden of proof under Strickland v. Washington, 466 U.S. 668 (1984).[28]  The Louisiana Supreme Court denied petitioner's related writ application finding he failed to show he received ineffective assistance of counsel under the standard of Strickland.[29]

---

[24] Carter, 115 So.3d at 1287; St. Rec. Vol. 3 of 10, 5th Cir. Order, 11-KA-758, pp. 3-4, 5/31/12.
[25] Petitioner's first enumerated claim is entitled "Inneffective [sic] Assistance of Counsel.  Failure to Evidence Rudimentary Knowledge of the Manner to Conduct Criminal Proceedings and of Criminal Law."  Rec. Doc. 1, p. 5. However, multiple references to alleged ineffective assistance of counsel are scattered throughout several other claims.
[26] The state argues that petitioner did not fairly present a violation of federal law because he failed to cite to any federal authority in his state court pleadings.  The undersigned recommends that this defense be rejected as it is clear from the record that the state courts relied on clearly established federal law as determined by the United States Supreme Court in denying petitioner's claims of ineffective assistance of counsel.
[27] St. Rec. Vol. 3 of 10, Trial Court Order, 1/28/16.
[28] St. Rec. Vol. 7 of 10, 5th Cir. Order, 16-KH-251, 5/17/16.
[29] State ex rel. Carter, 2018 WL 460284, at *1; St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2016-KP-1149, 1/12/18.

Because ineffective assistance of counsel claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting such claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.

> Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

As the state courts recognized, the clearly established federal law which governs ineffective assistance of counsel claims is set forth in Strickland. Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. 466 U.S. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of

inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

Petitioner initially claims that his trial counsel did not know how to practice criminal law and did "virtually nothing" to defend him. He more specifically claims that counsel did not seek the discovery of over 70 photographs depicting the damaged undercover police vehicle, the scene of his arrest, and his condition at the time of the arrest.

To prevail on a claim concerning inadequate investigation and preparation, a petitioner must show that a more thorough investigation or better preparation would have in fact benefited the defense. In other words, he must show that allegedly exculpatory evidence existed and would have been revealed through additional efforts. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th

Cir. 2011); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

Petitioner offers no evidence that his counsel actually failed to investigate the photographs. He offers no evidence whatsoever as to what investigative steps counsel took or failed to take with regard to the photographs. To the contrary, the record shows that defense counsel actively engaged in discovery. He filed a subpoena duces tecum which was converted to an oral motion for discovery and litigated at a hearing.[30] Defense counsel specifically requested "photographs of the 'non-descript' cars used by the Sheriff Officers in the apprehension of the defendant."[31] The record reflects that the prosecution advised that it had provided defense counsel with the photographs.[32] Defense counsel also requested photographs taken of petitioner at the time of his arrest.[33] He explained that petitioner had a laceration as a result of a physical scuffle during his arrest and he had not been given copies of photographs depicting the injury.[34] The prosecutor advised that he had shown the photographs to defense counsel, but he would reproduce those specific photographs requested.[35]

Nonetheless, even if petitioner were able to establish that his counsel failed to investigate the case, that alone would not suffice. Petitioner must further establish that the investigation would have resulted in a reasonable probability that the outcome of the trial would have been different. That defect is fatal, because a petitioner's bare speculation that additional investigation would have resulted in a different outcome at trial is insufficient to prove the prejudice required to prevail

---

[30] St. Rec. Vol. 1 of 10, Subpoena Duces Tecum, 10/11/10; St. Rec. Vol. 4 of 10, Hearing Transcript, 11/4/10.
[31] <u>Id.</u>
[32] St. Rec. Vol. 4 of 10, Hearing Transcript, 11/4/10, pp. 8, 11.
[33] <u>Id.</u>
[34] <u>Id.</u>, at pp. 8-10.
[35] <u>Id.</u>, at pp. 9-10.

on such a claim.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

Petitioner further claims that defense counsel withdrew his motion to disclose the identity of the confidential informant.  The record shows that defense counsel sought disclosure of the identity of the confidential informant.[36]  The state opposed the request at a hearing.[37]  Contrary to petitioner's claim, defense counsel did not withdraw his request, rather the state trial court denied it.[38]  The fact that the motion was unsuccessful does not render counsel's performance ineffective. Weber v. Cooper, Civ. Action No. 12–1575, 2013 WL 425934, at *12, 13 (E.D. La. Jan. 15, 2013) (citing Baker v. United States, 2011 WL 3841690, *13 (E.D.Va.2011) ("record shows ... counsel effectively advocated on petitioner's behalf ... [t]hus, counsel's actions were effective notwithstanding their lack of success")).

Petitioner next claims his counsel should have made a hearsay or Confrontation Clause objection to testimony that the confidential informant provided police with information that a black male in a vehicle matching the description of the one petitioner was driving would be distributing narcotics at the location in question.  Detective Layrisson, Detective Cursain, and Detective Senior each briefly testified that a confidential informant provided the police with information which led them to conduct surveillance of the parking lot and approach petitioner's vehicle on the night of the incident.[39]

The state correctly contends that the testimony does not constitute hearsay under Louisiana law. "Under the Louisiana Rules of Evidence, an investigating officer may be permitted to refer to statements made to him by other persons involved in the case without it constituting hearsay if

---

[36] St. Rec. Vol. 1 of 10, Subpoena Duces Tecum, 10/11/10.
[37] St. Rec. Vol. 4 of 10, Hearing Transcript, 11/4/10.
[38] Id., at p. 14.
[39] St. Rec. Vol. 4 of 10, Trial Transcript, pp. 14-15, 17-20, 23, 26, 42, 52-53, 2/23/11.

it explains his own actions during the course of an investigation and the steps leading to the defendant's arrest." Woodfox v. Cain, 609 F.3d 774, 814 (5th Cir. 2010). The hearsay exception has limits and generally will not include an explanation that involves a direct assertion of criminal activity by the accused. Id. The testimony at issue falls within this non-hearsay category because the detectives were merely explaining the steps they took during the investigation that led to Carter's arrest. The statements by the confidential informant were not offered for the truth of the matter asserted. As the statements were not hearsay, they did not violate the Confrontation Clause. See United States v. Smith, 822 F.3d 755, 762 (5th Cir. 2016) (no violation of Crawford v. Washington, 541 U.S. 36, (2004), where out-of-court statements were introduced to show how law enforcement developed suspects, rather than for the truth of matter asserted). Therefore, any objection would have been meritless, and it is clear that the "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994); accord United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); see also, Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) ("Counsel is not required to make futile motions or objections.").

Petitioner next claims that his counsel was extremely ill and that his health did not allow him to conduct a jury trial. There is simply no evidence supporting that claim. The only mention in the record of defense counsel's health occurred on the morning the trial was originally set to commence. At that time, defense counsel sought a continuance and explained:

15

The other factor is I have a little health issue that, I had a liver transplant last March and I just went through a period of rejection and I was at the hospital this morning and gave some blood. And it's not an issue of me being healthy, it's just an issue of longevity, of endurance. And so I'm afraid if we get rolling in a trial I may burn out and I don't want to compromise my client's representation at all.[40]

Defense counsel advised that it was a momentary setback and that he would be capable of trying the case the following month.[41]

It appears from defense counsel's statement that the only reason he sought a continuance of trial was due to the fact that he had given blood that morning. Further, there is no indication from the record that defense counsel's health actually affected his representation of petitioner at trial. Rather, the record reflects that defense counsel was well-prepared for trial. He gave an opening statement, made objections, cross-examined witnesses, presented witnesses in support of the defense case, and gave a closing argument.

Nor is there any evidence that defense counsel's health was the basis for the waiver of a jury trial. Instead, the record reflects that petitioner requested a bench trial for strategic purposes.[42] If it is petitioner's intention to claim that his counsel was ineffective in advising petitioner to elect a bench trial rather than to demand trial by jury, that claim likewise has no merit. The United States Fifth Circuit Court of Appeals has held that a petitioner is not entitled to federal habeas corpus relief based on such a claim unless he demonstrates that a different factfinder, i.e. a jury, would have rendered a different verdict. Wiltz v. Louisiana, 26 F.3d 1119, 1994 WL 286254, at *5 (5th Cir. June 22, 1994); Green v. Lynaugh, 868 F.2d 176, 178 (5th Cir. 1989); Bourgeois v.

---

[40] St. Rec. Vol. 6 of 10, Hearing Transcript, pp. 5-6, 1/3/11.

[41] Id., at p. 6.

[42] Id., at p. 5. As explained later in this report, petitioner fails to demonstrate that the state court's finding that petitioner's waiver of his right to a jury trial was knowingly and willingly made was an objectively unreasonable determination of clearly established federal law.

Bergeron, Civ. Action No. 09-3185, 2009 WL 5088756, at *13 (E.D. La. Dec. 23, 2009). Petitioner has made no such showing, and, therefore, the claim fails.

Finally, petitioner contends that defense counsel "failed at sentencing" and did not file a motion to reconsider sentence. Petitioner does not explain what counsel should have done differently at sentencing nor has he demonstrated a reasonable probability that the result of the sentencing would have been different but for counsel's conduct. Furthermore, petitioner's claim that he failed to file a motion to reconsider the sentence is utterly false. The record reflects that defense counsel filed a motion for reconsideration of sentence on July 13, 2011, which was subsequently denied by the state district court.[43]

For all of these reasons, it is clear that petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court denies relief.

**Waiver of Jury Trial**

Petitioner next claims that he did not knowingly and intelligently waive his right to trial by jury. When he raised this issue on direct review, the Louisiana Fifth Circuit noted that the record was insufficient to determine if Carter's jury trial waiver was knowing and intelligent and remanded the case for an evidentiary hearing.[44] Upon remand, the state trial court held an evidentiary hearing and considered the testimony of Carter's trial counsel, Greg Bachaud.[45] The trial court concluded that the jury trial waiver was knowing and intelligent.[46]

---

[43] St. Rec. Vol. 1 of 10, Motion for Reconsideration of Sentence, 7/13/11; Order, 7/14/11.
[44] Carter, 96 So.3d at 1293; St. Rec. Vol. 4 of 10, 5th Cir. Opinion, 11-KA-758, 5/31/12, pp. 13-14.
[45] St. Rec. Vol. 5 of 10, Hearing Transcript, 8/8/12.
[46] Id., at pp. 22-23.

On appeal after remand, the Louisiana Fifth Circuit considered and rejected Carter's claim that the state trial court erred in determining that the evidence adduced at the evidentiary hearing was sufficient to determine that he made a knowing and intelligent waiver of his right to trial by jury. The court explained:

> In his sole assignment of error, defendant argues that the trial court erred in finding that the waiver of his right to a trial by jury was knowingly and intelligently made.
>
> Although the right to a trial by jury may be waived in non-capital cases, the right must be "knowingly and intelligently" waived. La.C.Cr.P. art. 780(A); La. Const. Art. I, § 17(A). Waiver of this right is never presumed. State v. Goodwin, 05–51 (La. App. 5 Cir. 6/28/05), 908 So.2d 56, 59 (citation omitted).
>
> The preferred method for the district court to advise the defendant of the right to a trial by jury is in open court before obtaining a waiver; however, such practice is not statutorily required. In addition, although preferred, it is not necessary for the defendant to waive the right to a trial by jury personally. State v. McCloud, 04–1112 (La. App. 5 Cir. 3/29/05), 901 So.2d 498, 503, writ denied, 05–1450 (La. 1/13/06), 920 So.2d 235 (citations omitted), State v. Pierre, 02–2665 (La. 3/28/03), 842 So.2d 321, 322 (per curiam ); State v. Kahey, 436 So.2d 475, 486 (La. 1983); State v. Muller, 351 So.2d 143, 146–47 (La.1977); State v. Howard, 10–869 (La. App. 5 Cir. 5/24/11), 66 So.3d 1160, 1165, writ denied sub nom., State ex rel. Howard v. State, 11–1468 (La.4/9/12), 85 So.3d 135. Defense counsel may waive the defendant's right to a trial by jury on his behalf as long as the defendant's decision to do so was made knowingly and intelligently. Id.
>
> On remand, at the evidentiary hearing conducted on August 8, 2012, the trial court heard testimony from defendant's trial counsel, Gregory Bachaud. After defendant waived the attorney-client privilege, Mr. Bachaud testified regarding his representation of defendant, in pertinent part, as follows:
>
>> [STATE]: ... [D]id you discuss with [defendant] his rights as they relate to a judge trial or a jury trial before this court, this case?
>> [BACHAUD]: Yes, yes.
>> [STATE]: Did you explain to him that he had the right and it was his decision to make the choice between a judge or jury trial?
>> [BACHAUD]: Yes.
>> [STATE]: And did he elect to go forward with a judge trial in this matter or a bench trial in this matter?
>> [BACHAUD]: Yes.
>> [STATE]: Were you satisfied after you explained [defendant's] right to him that he understood his rights in this regard?
>> [BACHAUD]: Yes, I believe so.

[STATE]: Is it true that you discussed with this Court that you believed that it was a sound strategic decision and it was a decision that you discussed with [defendant] to go forward with a judge trial in this matter?

[BACHAUD]: Yes, well, Mr. Paciera was the district attorney at the time and I believe it was in February, anyway I can't remember the exact day that I informed the Court that [defendant] and I had discussed it and that we were going to waive a jury trial, [defendant] was going to waive a jury trial and elect to have a judge trial.

\* \* \*

[STATE]: If ... [defendant] had changed his mind with regard to a judge trial and wanted to go forward instead with a jury trial would you have indicated that to the Court?

[BACHAUD]: Yes.

[STATE]: And is there any indication that you did so ...?

[BACHAUD]: No.

\* \* \*

THE COURT: Now, you're not implying that you would ever encourage a client of yours to waive his right to a jury without you being firm in your mind that he agrees to that strategy?

[BACHAUD]: That's correct, and that's what I was saying was I took extra effort to make sure that, you know, I explained things in general to my clients, but particularly here I did and beyond that once it hit his ears I don't know what he put together after that.

THE COURT: But you had more than one discussion with him about what would be the best way to approach ... this case or these cases and he agreed with your advice that the best strategy, let's go with a bench, not a jury.

[BACHAUD]: Yes.

\* \* \*

THE COURT: ... [Y]ou are certain in your mind that he understood up until the time the trial commenced ... he could have changed his mind and asked for a jury, is that correct?

[BACHAUD]: That's correct.

On cross-examination, Mr. Bachaud testified, in pertinent part, as follows:

[DEFENSE]: ... Prior to your discussion with [defendant] regarding the waiver of jury had you ever had an occasion in which you had an issue communicating effectively with each other?

[BACHAUD]: No.

[DEFENSE]: Did you address the issue of if you were to elect a jury trial the amount of votes that would be necessary for a conviction versus going with a judge trial, whereas the judge would be the sole trier of fact?

[BACHAUD]: Yes.

[DEFENSE]: And to your knowledge ... was there anything to memorialize the defendant's understanding that he knew what he was doing when he elected to waive the jury, such as [a] written document or a court transcript?

[BACHAUD]: Um, not, not that I know. I mean, there's a minute entry that I requested to waive the jury trial on behalf of [defendant].

At the conclusion of the evidentiary hearing, the trial court ruled as follows:

The Court finds based on the evidence and in consideration of the law that this is one of those instances where we did not have, that is the Bench did not have[,] the luxury of actually conducting an open dialog with the defendant himself.

However, as I understand the law in this State absent that a valid waiver could still have occurred depending on all of the other evidence supporting the record's indication that the defendant through counsel sought to waive a jury trial.

In this case we have Mr. Bachaud testifying and that's all we had testifying was Mr. Bachaud. Mr. Bachaud testified that while he did not remember the number of occasions he dialoged with his client, ... the Court was impressed that on more than one occasion, a number of occasions, the number of which is unknown at this point, he discussed the strategy that he thought was appropriate in representing [defendant] and that strategy was to seek a bench trial.

[Defendant] was present in court on those occasions in which Mr. Bachaud, his attorney, announced in open court that he seeks a bench trial, not a jury trial.

I find that that evidence, although absent an open dialog directly with the defendant, is enough to convince me ... that [defendant] was sufficiently counseled and consciously and intelligently waived his right to be tried before a jury.

In State v. Pierre, supra, the Supreme Court found that the defendant had knowingly and intelligently waived his right to a trial by jury because: (1) defense counsel waived a jury trial on the defendant's behalf; (2) the trial court memorialized the defendant's earlier waiver in the defendant's presence; and (3) defense counsel stated that he and his client had discussed the waiver at length and on several occasions, and both agreed to the waiver.

The instant case is similar to the factual circumstances of State v. Pierre. In the instant case, on January 3, 2011, in defendant's presence, defense counsel requested a bench trial on defendant's behalf. On February 22, 2011, also in defendant's presence, the trial court made it clear that the matter would proceed to a bench trial. Then, on the morning of trial, once more in defendant's presence, when the prosecutor asked whether defendant had waived his right to a jury trial, defense counsel responded in the affirmative. At no point during these proceedings did defendant object to a bench trial.

Subsequently, at the evidentiary hearing on remand, defense counsel specifically testified, as noted above, that he advised defendant of his right to a jury

20

> trial, that he believed defendant understood this right, that he informed defendant
> of the consequences of proceeding to trial by jury versus trial by judge, that he
> discussed the strategy of trial by judge with defendant on more than one occasion,
> and that defendant agreed with this strategy.
>
> For the foregoing reasons, we find that the evidence elicited at the hearing
> conducted on this issue on remand was sufficient for the trial court to determine
> that defendant knowingly and intelligently waived his right to a trial by jury.
> Accordingly, defendant's assignment of error is without merit.[47]

The Louisiana Supreme Court denied petitioner's related writ application without additional comment.[48]

The right to a jury trial in serious criminal cases is a fundamental constitutional right. U.S. Const. amends. VI, XIV; Duncan v. Louisiana, 391 U.S. 145,157–58 (1968). As the Louisiana Fifth Circuit has recognized, the Supreme Court has not held that a defendant must personally waive the right to a jury trial. Pierre v. Leger, 495 F. App'x 403, 409 (5th Cir. 2012) (citing Scott v. Cain, 364 F. App'x 850, 855 (5th Cir. 2010) (per curiam)). A defendant may waive the right through counsel. Id. (citing United States v. Page, 661 F.2d 1080, 1080–83 (5th Cir.1981) (upholding waiver of jury trial made by defendant's attorney), cert denied, 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 136 (1982)); see also Gonzalez v. United States, 553 U.S. 242, 255–58, (2008) (Scalia, J., concurring). The waiver through counsel, however, must be knowing and intelligent. Id. (citing United States v. Mendez, 102 F.3d 126, 130–31 (5th Cir.1996) and Patton v. United States, 281 U.S. 276, 312 (1930)). Notably, the Supreme Court has not defined any "fact-specific constitutional minima for a valid jury waiver" or "required a set colloquy before a jury waiver can be accepted." Pierre, 495 F. App'x at 410 (quoting Scott, 364 F. App'x at 855). Instead, the determination whether "there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." Adams v.

---

[47] Carter, 121 So.3d at 150-53; St. Rec. Vol. 5 of 10, 5th Cir. Opinion, 12-KA-932, pp. 3-7, 2/22/13.
[48] Carter, 132 So.3d at 411; St. Rec. Vol. 8 of 10, La. S. Ct. Order, 2013-K-1853, 2/14/14.

United States ex rel. McCann, 317 U.S. 269, 278 (1942). The waiver of a constitutional right cannot be presumed from a silent record, however. Boykin v. Alabama, 395 U.S. 238, 242 (1969).

Applying these legal principles in Pierre, the Fifth Circuit held the mere absence of a colloquy between the defendant and trial court regarding the constitutional right to a jury trial did not compel a finding that the waiver was not knowing and intelligent. Pierre, 495 F. App'x at 410. The Fifth Circuit concluded that the record supported the state court's decision that petitioner knowingly and intelligently waived her right to a jury trial through her defense counsel despite the absence of any colloquy between the petitioner and trial court. Id. at 411.

On habeas review, a state court's determination that a petitioner's jury trial waiver was valid is a mixed question of law and fact. Pierre, 495 F. App'x at 405; Pignataro v. Poole, 381 F. App'x 46, 50 (2d Cir. 2010); Lott v. Coyle, 261 F.3d 594, 610 (6th Cir. 2001); United States v. Watts, 45 F. App'x 323, 2002 WL 1868131, at *2 (5th Cir. 2002). Thus, the state court's mixed findings of law and fact are entitled to deference, unless the state court's decision was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. Pierre, 495 F. App'x at 405.

The record in this case is not silent. It shows that petitioner waived his right to a jury trial through his counsel of record. Initially, the record reflects that Carter was notified of his right to a jury trial at his arraignment on July 22, 2010.[49] Carter was present at a hearing on January 3, 2011, at which attorney Bachaud informed the state trial court that Carter wished to waive his right to a jury trial. Attorney Bachaud stated:

> I was going to make a request for a, after referring with my client this weekend and discussing our strategy that we were going to undertake at trial, he has asked for the right to have a trial by a judge, bench trial.

---

[49] St. Rec. Vol. 1 of 10, Hearing Transcript, p. 3, 7/22/10.

I understand it's late, but it's waiveable and we haven't gotten into it too much.[50]

Carter did not object at that time.  The state trial court granted a continuance but reserved ruling on the bench trial request.[51]  Carter was again present on February 22, 2011, when the state trial court granted the request for a bench trial and set the trial for the following day.[52]  On the morning of trial, the prosecutor stated in open court, "It's my understanding, Judge, that the defendant is waiving his right to a jury trial in this case."[53]  Attorney Bachaud responded, "That's correct, Your Honor."[54]  Carter did not voice any objection to the waiver or indicate that he wished to proceed with a jury trial.

Attorney Bachaud testified under oath at the evidentiary hearing that he discussed with Carter his right to a jury trial and that he believed Carter understood.[55]  Bachaud confirmed that he explained to Carter the number of jurors who would have to vote to convict him versus having a judge be the sole trier of the facts.[56]  According to Bachaud, he advised Carter that the best strategy was for him to waive his right to a jury trial and Carter agreed with his advice.[57]  Bachaud was certain that Carter understood that he could change his mind up until the trial commenced.[58]  Carter does not present any objective evidence demonstrating that he did not understand his rights as explained by defense counsel.  Furthermore, defense counsel's testimony is consistent with Carter's lack of objection in this case.

---

[50] St. Rec. Vol. 6 of 10, Hearing Transcript, p. 5, 1/3/11.
[51] Id., at pp.7-8; St. Rec. Vol. 1 of 10, Minutes, 1/3/11.
[52] St. Rec. Vol. 1 of 10, Minutes, 2/22/11.
[53] St. Rec. Vol. 4 of 10, Trial Transcript, p. 7, 2/23/11
[54] Id.
[55] St. Rec. Vol. 5 of 10, Hearing Transcript, pp. 7, 9, 17, 8/8/12.
[56] Id., at p. 17.
[57] Id., at pp. 9, 15
[58] Id., at p. 15

Significantly, in this case, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). Applying this deferential standard of review under the AEDPA, Carter has not shown that the state court's determination rests on an objectively unreasonable determination of clearly established federal law. He is not entitled to habeas corpus relief on this claim.

## Unlawful Arrest

Carter next claims that his arrest violated the Fourth Amendment as there was no probable cause or reasonable suspicion to arrest him. He further contends that the state courts failed to "honor the right to resist unlawful arrest."[59] Petitioner argues as follows:

> [o]n the date he and his companion and child were subjected to an armed assault by members of a Jefferson Parish Narcotics Unit, they had done nothing more than pull into a parking space adjacent to a Poppa [sic] John's Pizza. It was daylite and it was a major strip mall on Arline Highway. Without warning, two ordinary cars 'boxed' him in, the driver of the car in the rear, jumped out and pointed his pistol at Carter's head, as the driver in the front did the same. Carter reacted and did minor damage to one of the cars the JSPO narcs were used. JPSO claimed justification pursuant to "confidential informant information."[60]

As the state correctly notes in its response, Fourth Amendment claims generally are not reviewable in a federal habeas corpus proceeding. In Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320

---

[59] Rec. Doc. 1, p. 10.
[60] Id.

(5th Cir. 2002). This rule applies to all claims arising under the Fourth Amendment. See e.g. Cardwell v. Taylor, 461 U.S. 571, 572, 103 S.Ct. 2015, 2016, 76 L.Ed.2d 333 (1986) (arrest).

The United States Court of Appeals for the Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978); Janecka, 301 F.3d at 320. "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone bars federal habeas corpus consideration of that claim ...." Caver, 577 F.2d at 1192 (citations omitted). The Fifth Circuit has also held that the Stone bar applies despite an error by the state court on procedural grounds or the merits of the Fourth Amendment claim. Swicegood v. Alabama, 577 F.2d 1322, 1324–25 (5th Cir. 1978); Williams v. Brown, 609 F.2d 216, 219–20 (5th Cir 1980).

Thus " 'in the absence of allegations that the processes provided by a state to fully and fairly litigate Fourth Amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of Fourth Amendment claims on their merits,' Stone v. Powell [bars] petitioner's claim even [if] the habeas court's procedural mistakes thwarted the presentation of the claim." Andrews v. Collins, 21 F.3d 612, 632 (5th Cir. 1994) (quoting Williams, 609 F.2d at 220). In this case, Carter neither alleges nor demonstrates that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims. Moreover, "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." Bailey v. Cain, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting Report and Recommendation); Thomas v. Warden, La. State Penitentiary, Civ. Action No. 11-2119, 2015 WL 1508432, at *5 (W.D. La. Mar. 30, 2015) (noting that "Louisiana law provides a procedural mechanism to litigate Fourth Amendment claims"), certificate of appealability denied, 15-30378 (5th Cir. Apr. 15, 2016)

In addition, the record establishes Carter received appropriate review in the state courts. On direct appeal, petitioner claimed there was no reasonable cause for the investigatory stop and no probable cause for the resulting arrest. In the last reasoned opinion on the issue, the Fifth Circuit consolidated the issue with the petitioner's claim of insufficient evidence and found as follows:

> Defendant asserts that the evidence presented at trial was insufficient to support his conviction. Defendant does not deny the allegations against him.[3] Rather, defendant claims that his detainment was unlawful and amounted to an arrest; therefore, defendant asserts that his actions in damaging the unmarked police unit were justified under the circumstances. The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. La. R.S. 14:18. Justification is an affirmative defense which the accused must establish by a preponderance of the evidence. State v. Cheatwood, 458 So.2d 907 (La.1984). However, the evidence does not demonstrate that the defendant's detention in this case amounted to an arrest or was otherwise unlawful. As such, defendant's actions cannot be justified under the facts of this case.
>
> [3]Defendant was convicted of aggravated criminal damage to property. La. R.S. 14:55 defines Aggravated criminal damage to property as "the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion."
>
> The testimony reflects that Detective Layrisson received information from a confidential informant, who he had worked with in the past, that a black male with dreads driving a grey colored vehicle with designs on its side would be distributing narcotics in the Rouse's parking lot at the intersection of Airline Drive and Labarre Road between 6:15 p.m. and 6:45 p.m. Detective Layrisson testified that during the expected time frame, a grey Pontiac with blue and purple or pink decals on the side entered the parking lot just as the confidential informant described. Detective Cursain, who also assisted in the investigation, corroborated Detective Layrisson's testimony and testified that a vehicle matching the informant's description entered the parking lot but did not appear to be traveling to any particular store, specifically noting that the vehicle drove past businesses including Papa John's pizza.[4]
>
> [4]Defendant and Nikkia Nickles testified that they planned to order pizza from Papa John's pizza. Defendant further admitted in his testimony that he was out past his curfew for house arrest but planned to quickly order pizza and return home.
>
> Cursain noticed that Detective Senior was "a step or two away" from his unit door when the subject vehicle "lunged forward" in an attempt to escape. At one point, Cursain lost sight of Detective Senior and did not know if he had been hit by the subject vehicle or had become trapped in between the two vehicles. He further stated the subject vehicle then reversed and again accelerated, hitting Detective Senior's unit to escape. Cursain then approached the subject vehicle by foot and was "about to shoot into the vehicle" when he noticed a small child in the

26

backseat and refrained. Cursain stated that he could not recall if he immediately identified himself as a police officer after exiting his unit, although he was wearing a department issued vest and approached with his gun drawn. Nevertheless, the subject vehicle pushed Detective Senior's unit to effect the escape, exited the parking lot and proceeded onto Labarre Road.

Detective Senior testified that he wore a police badge on a chain around his neck when he approached defendant's vehicle with his lights activated and gun drawn. Senior testified he recalled Detective Cursain shouting some type of verbal order to defendant, like "Police, get out," but he could not recall the exact language used. When Senior exited his vehicle, he left his car door open; he made eye contact with defendant and got a feeling that defendant was not going to "give up." Senior immediately retreated back into his unit when suddenly defendant's vehicle slammed into his unit's door. Thereafter, defendant's vehicle reversed and hit Senior's unit a second time, accelerating until it could escape. Detective Senior testified that he feared for his life as defendant's vehicle lunged forward into his unit, stating that he "would have been crushed between the two cars" if he had not retreated to his unit. After defendant was apprehended, Detective Senior identified him as the individual driving the vehicle in the parking lot. Detective Senior admitted that drugs were never found in defendant's vehicle or on his person but noted that his flight afforded him ample opportunity to discard them.

The Fourth Amendment to the United States Constitution and the Louisiana Constitution Article I, § 5 protects individuals from unreasonable searches and seizures. State v. Massey, 03–1166 (La. App. 5 Cir. 1/27/04), 866 So.2d 965, 968. Law enforcement officers are authorized by La. C. Cr. P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops to interrogate persons reasonably suspected of criminal activity. State v. Sam, 05–88 (La. App. 5 Cir. 5/31/05), 905 So.2d 379, 383, writ denied, 05–2100 (La. 3/10/06), 925 So.2d 510. An investigatory stop necessarily involves an element of force or duress and the temporary restraint of a person's freedom. State v. Broussard, 00–3230 (La.5/24/02), 816 So.2d 1284, 1286. There is the complete restriction of movement in an investigatory stop, but for a shorter period of time than an arrest. Id. at 1287. An investigatory stop is reasonable even when the police block a vehicle to prevent its occupant from leaving and approach with weapons ready or even drawn. Id. at 1288–89.

Reasonable suspicion is required for an investigatory stop. State v. Nelson, 02–65 (La. App. 5 Cir. 6/26/02), 822 So.2d 796, 800, writ denied, 02–2090 (La.2/21/03), 837 So.2d 627. Reasonable suspicion is something less than probable cause to arrest and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual's right to be free from government interference. Massey, supra. An informant's tip may create reasonable suspicion necessary to justify an investigatory stop under the totality of the circumstances. Id. An informant's past record for accuracy and reliability is only one factor taken into account when determining the reliability of the tip in question. State v. Austin, 04–993 (La. App. 5 Cir. 3/1/05), 900 So.2d 867, 879, writ denied, 05–0830 (La. 11/28/05), 916 So.2d 143. An independent police investigation that corroborates details of the informant's tip is valuable in applying the totality of the

circumstances analysis. State v. Clay, 06–37 (La. App. 5 Cir. 4/25/06), 930 So.2d 1028, 1032. The record in this case supports a finding that the confidential informant's tip contained predictive information indicating that the informant had "inside information" or a "special familiarity" with defendant's affairs. Nelson, 02–65 (La. App. 5 Cir. 6/26/02), 822 So.2d at 803.

In the instant case, the detectives corroborated information from the confidential informant, who they had used in the past, to support a reasonable belief that the informant had reliable information regarding defendant's activity. The informant gave the police the suspect's physical description, including his race, gender, and hairstyle. The informant was also able to describe the vehicle the suspect would be driving—a grey vehicle with colored designs on the side. Further, the informant was able to predict the suspect's future behavior by correctly predicting the specific place and time, within 30 minutes, that the suspect would arrive with contraband. As the detectives surveyed the situation, they corroborated the informant's information when they observed a man, fitting the description of the suspect, driving a vehicle matching the informant's description to the expected location within the specified time frame. Therefore, considering the totality of the circumstances in this case, we find the officers had reasonable suspicion to conduct an investigatory stop.

Defendant contends that the actions of the officers blocking his vehicle to attempt to prevent his escape amounted to an arrest. Defendant asserts he was arrested when the police approached by blocking his vehicle without announcement with their guns drawn.

The vast majority of courts have held that police actions in blocking a suspect's vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest per se. United States v. Edwards, 53 F.3d 616, 619 (3rd Cir.1995). An investigatory stop necessarily involves an element of force or duress and the temporary restraint of a person's freedom. There is the complete restriction of movement in an investigatory stop, but for a shorter period of time than an arrest. State v. Anthony, 07–204 (La.App. 5 Cir. 11/27/07), 971 So.2d 1219, 1225, writ denied sub nom., State ex rel. Anthony v. State, 2008–0338 (La.1/16/09), 998 So.2d 98 and State v. Broussard, 00–3230 (La.5/24/02), 816 So.2d 1284, 1286. Investigatory stops may be accompanied by features normally associated with an arrest, i.e., use of drawn weapons. An investigatory stop is reasonable even when the police block a vehicle to prevent its occupant from leaving and approach with weapons ready or even drawn. State v. Anthony, 07–204 (La. App. 5 Cir. 11/27/07), 971 So.2d 1219, 1225, writ denied sub nom. State ex rel. Anthony v. State, 2008–0338 (La .1/16/09), 998 So.2d 98. Because an officer's view of a suspect seated in a car is always partially obscured, the officer is at a disadvantage when he approaches the occupant. United States v. Edwards, 53 F.3d 616, 619 (3rd Cir.1995). Furthermore, guns and drugs frequently go hand-in-hand. State v. Warren, 05–2248, p. 18 (La.2/22/07), 949 So.2d 1215, 1229.

Under the facts of this case, we find that the officers had reasonable suspicion to conduct an investigatory stop and that the stop conducted in this case did not amount to an arrest. As discussed above, defendant does not deny causing damage to the officer's unmarked patrol unit and does not assert that the state failed

to prove the elements of the crime of aggravated criminal damage to property. At trial, defendant testified that he did in fact cause the damage demonstrated by photographs of Detective Senior's unit introduced at trial. As such, we find the evidence presented at trial was sufficient to support defendant's conviction for aggravated criminal damage to property.[61]

Based on the state court record, "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." Andrews, 21 F.3d at 631. The state provided Carter, who was assisted by counsel, with the opportunity to litigate his Fourth Amendment claim fully and fairly. The fact that he disagrees with the state court's decision to deny relief is not sufficient to overcome the Stone prohibition of federal review of his Fourth Amendment claim. Janecka, 301 F.3d at 320-21; Williams v. Collins, 16 F.3d 626, 637-38 (5th Cir. 1994). Accordingly, Stone bars review of this claim, and this claim for federal habeas relief must be dismissed.

### Brady/Napue

Carter next argues that the state suppressed evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. Carter contends that the prosecution withheld over 70 photographs depicting the scene of his arrest. He claims one of the photographs would have demonstrated that Detective Senior falsely testified that his vehicle had a blue light mounted on the dashboard of his unmarked vehicle.

Petitioner raised this issue in his application for post-conviction relief and related supplements. The state trial court found the claim to be entirely conclusory and insufficient to meet his burden under La. Code Crim. P. art. 930.2.[62] The Fifth Circuit found no error in the trial court's ruling that petitioner did not prove that the State withheld photographic evidence from the

---

[61] Carter, 96 So.3d at 1288-91; St. Rec. Vol. 4 of 10, 5th Cir. Order, 11-KA-758, pp. 5-10, 5/31/12.
[62] St. Rec. Vol. 3 of 10, Trial Court Order, 1/28/16.

time of his arrest.[63]  The Louisiana Supreme Court similarly found that Carter failed to show the State withheld evidence in violation of Brady.[64]

Because the state courts denied petitioner's Brady claim on the merits in the post-conviction proceedings, the AEDPA places severe limitations on this Court's review of the state court's decision. The United States Fifth Circuit Court of Appeals has explained:

> Under AEDPA, [a federal court] do[es] not decide *de novo* whether a state prisoner has sufficiently proven a Brady violation.  See Yarborough v. Alvarado, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a de novo matter."); Neal v. Puckett, 286 F.3d 230, 236 (5th Cir. 2002) (*en banc*) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect.").  Rather, [a federal court] decide[s] whether the state court's Brady determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. Busby v. Dretke, 359 F.3d 708, 717 (5th Cir. 2004).

Dickson v. Quarterman, 462 F.3d 470, 477-78 (5th Cir. 2006).

The clearly established federal law to be used in analyzing Brady claims is well known.

As the United States Supreme Court held:

> "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady [v. Maryland, 373 U.S. 83,] 87, 83 S.Ct. 1194, [10 L.Ed.2d 215 (1963) ].  Evidence qualifies as material when there is " 'any reasonable likelihood' " it could have " 'affected the judgment of the jury.' " Giglio [v. United States, 405 U.S. 150,] 154, 92 S.Ct. 763, [31 L.Ed.2d 104 (1972) ] (quoting Napue v. Illinois, 360 U.S. 264, 271, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)).  To prevail on his Brady claim, [a petitioner] need not show that he "more likely than not" would have been acquitted had the new evidence been admitted. Smith v. Cain, 565 U.S. 73, —— – ——, 132 S.Ct. 627, 629-631, 181 L.Ed.2d 571 (2012) (internal quotation marks and brackets omitted).  He must show only that the new evidence is sufficient to "undermine confidence" in the verdict. Ibid.

Wearry v. Cain, 136 S. Ct. 1002, 1006 (2016).  The Supreme Court has also explained:

---

[63] St. Rec. Vol. 7 of 10, 5th Cir. Order, 16-KH-251, 5/17/16.
[64] State ex rel. Carter, 2018 WL 460284, at *1; St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2016-KP-1149, 1/12/18.

> We have ... held that the duty to disclose such evidence is applicable even though there has been no request by the accused, <u>United States v. Agurs</u>, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, <u>United States v. Bagley</u>, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).... Moreover, the rule encompasses evidence "known only to police investigators and not to the prosecutor." [<u>Kyles v. Whitley</u>, 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).] In order to comply with <u>Brady</u>, therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." <u>Kyles</u>, 514 U.S., at 437, 115 S.Ct. 1555.

<u>Strickler v. Greene</u>, 527 U.S. 263, 280-81 (1999).

Therefore, in summary: to prevail on a <u>Brady</u> claim, a petitioner must establish three elements: "(1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment." <u>DiLosa v. Cain</u>, 279 F.3d 259, 262-63 (5th Cir. 2002).

Petitioner's <u>Brady</u> claim concerning the photographs falters on the very first prong of that analysis. Petitioner has offered no evidence whatsoever in support of his bald allegation that the photographs depicting the scene of his arrest were withheld from the defense.[65] That failure to provide any evidence on the initial prong of the <u>Brady</u> inquiry is, in and of itself, fatal. <u>Higgins v. Cain</u>, Civ. Action No. 09-2632, 2010 WL 890998, at *5 (E.D. La. Mar. 8, 2010), <u>aff'd</u>, 434 F. App'x 405 (5th Cir. 2011); <u>Williams v. Cain</u>, Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *5 (E.D. La. May 7, 2009), <u>aff'd</u>, 359 F. App'x 462 (5th Cir. 2009); <u>Watson v. Cain</u>, Civ. Action No. 06-613, 2007 WL 1455978, at *7 (E.D. La. May 17, 2007); <u>Abron v. Cain</u>, Civ. Action No. 05-876, 2006 WL 2849773, at * 10 (E.D. La. Oct. 3, 2006); see <u>Harris v. United States</u>, 9 F. Supp.

---

[65] To the contrary, the record indicates that the state provided "open file discovery." St. Rec. Vol. 1 of 10, Motion to Quash Subpoenas Duces Tecum Issued by Defendant to Vincent Paciera, Jr. Assistant State Attorney, 10/19/10. Also, at a hearing, the prosecutor explained that defense counsel had reviewed the photographs. When discussing photographs of the undercover vehicle, the prosecutor explained, "The only photographs that exist in this case in my file or upon request from the Sheriff's Office are I think four sets, either two or four sets of photographs, all of which are contained in my file, all of which have been shown to counsel." St. Rec. Vol. 4 of 10, Hearing Transcript, p. 11, 11/4/10.

2d 246, 275 (S.D.N.Y. 1998) ("[T]he government does not bear the burden of establishing that documents were not withheld; it is [petitioner's] burden to prove that the government failed to disclose evidence favorable to [him].), aff'd, 216 F.3d 1072 (2nd Cir. 2000).

In that petitioner has failed to demonstrate that the state court's decision denying his Brady claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), this Court should defer to the state court's decision and likewise deny the claim.

With respect to his claim that his conviction was obtained in violation of Napue v. Illinois, 360 U.S. 264, 269 (1959), it is true that due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue, 360 U.S. at 269; Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996). However, a petitioner is entitled to relief on such a claim only if he shows that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material. Duncan v. Cockrell, 70 F. App'x 741, 744 (5th Cir. 2003). Evidence is 'false' if, inter alia, it is specific misleading evidence important to the prosecution's case in chief. False evidence is 'material' only if there is any reasonable likelihood that it could have affected the jury's verdict." Id.

Here, petitioner claims that "[t]he law enforcement officer testified that he had a blue light 'mounted on his dashboard' and that one of the photographs "proved the officer was testifying falsely."[66] Detective Senior, however, did not testify he had a blue light "mounted on the dashboard", rather he testified that he had wigwags on the front and back of his vehicle and a small blue dash light that "sits up on the dashboard of the car."[67] Furthermore, even if a single

---

[66] Rec. Doc. 1, p. 13.
[67] St. Rec. Vol. 4 of 10, Trial Transcript, pp. 47-48, 2/23/11.

photograph did not show a blue light on the dashboard, that alone does not establish that Detective Senior falsely testified. Detective did not testify that the dashboard light was permanently affixed, and given that petitioner struck Detective Senior's vehicle twice in order to escape the scene, it is possible that the light fell off the dashboard. Alternatively, Detective Senior could have simply been mistaken about the existence of the blue dashboard light. Perjury is the offering of "false testimony concerning a material matter with the *willful intent* to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993) (emphasis added).

Based on the record, petitioner has not shown that that Detective Senior's testimony was in fact false. Likewise, petitioner has failed to prove that the prosecution directed or procured Detective Senior's alleged perjured testimony. For these reasons, petitioner has not shown that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, relief is not warranted.

## Excessive Sentence

Carter's final claim is that he was punished for failing to plead guilty to the multiple offender bill and that his 20 year sentence is grossly disproportionate.

Carter claimed the sentence was unconstitutionally excessive on direct appeal. The Louisiana Fifth Circuit denied his claim finding as follows:

> Defendant also asserts that his sentence is unconstitutionally excessive. He argues that his twenty year multiple offender sentence is excessive and further claims that the trial judge failed to consider mitigating factors under La. C. Cr. P. art. 894.1. In particular, defendant claims that the trial court failed to consider (1) that the officer was not injured, (2) there was only minimal damage to the officer's vehicle, and (3) although defendant had several prior felony convictions, he since those convictions had a child and returned to school to learn a trade.

It is first noted that defendant's argument concerning the trial court's failure to articulate the factors considered for sentencing as required by La. C. Cr. P. art. 894.1 lacks merit. Compliance with sentencing guidelines pursuant to La. C. Cr. P. art. 894.1 is not required when the sentence imposed is statutorily prescribed under the Habitual Offender Law. State v. Howard, 10–541 (La. App. 5 Cir. 4/26/11), 64 So.3d 377, 385, writ denied, 2011–1073 (La.12/2/11), 76 So.3d 1173. In considering defendant's argument that his sentence is constitutionally excessive, we note that an excessive punishment or sentence is prohibited under the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Crawford, 05–494, p. 6 (La. App. 5 Cir. 1/31/06), 922 So.2d 666, 669; State v. Jones, 05–735, p. 6 (La. App. 5 Cir. 2/27/06), 924 So.2d 1113, 1116, writ denied, 07–0151 (La.10/26/07), 966 So.2d 567; State v. Riche, 608 So.2d 639, 640 (La. App. 5 Cir.1992), writ denied, 613 So.2d 972 (La. 1993). In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Taylor, 06–839, p. 3 (La. App. 5 Cir. 3/13/07), 956 So.2d 25, 27, writ denied, 06–0859 (La.6/15/07), 958 So.2d 1179. A trial court is afforded great discretion in determining sentences and sentences within the statutory limit will not be set aside as excessive absent clear abuse of that broad discretion. State v. Crawford, 05–494 at p. 6, 922 So.2d at 669. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Allen, 03–1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 880.

The appellate court can look to the record for support of the defendant's sentence and, if the record supports defendant's sentence, the appellate court shall not set aside the sentence for excessiveness. State v. Jones, 05–735 at p. 8, 924 So.2d at 1117; LSA–C.Cr.P. art. 881.4(D); State v. Robinson, 07–832 (La. App. 5 Cir. 4/15/08), 984 So.2d 856, 868, writ denied, 2008–1086 (La.12/19/08), 996 So.2d 1132. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Id.; State v. Crawford, 05–494 at p. 8, 922 So.2d at 670–71.

In the present case, defendant was adjudicated a second felony offender based on an underlying conviction of aggravated criminal damage to property. As a matter of law, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Howard, 10–541 (La. App. 5 Cir. 4/26/11), 64 So.3d 377, 384, writ denied, 2011–1073 (La.12/2/11), 76 So.3d 1173. As a second felony offender, defendant faced a habitual offender sentencing range between 7 ½ and 30 years. See LSA–R.S. 15:529.1(1); LSA–R.S. 14:55.10.[5] Therefore, defendant's sentence of 20 years is well within the sentence range and is supported by comparison of similar sentences for similar crimes. See State v. Lacayo, 10–1119 (La. App. 1 Cir. 2/11/11), 57 So.3d 609, writ denied, 11–0517 (La.9/30/11), 71 So.3d 281.

[5] LSA–R.S. 14:55 provides in pertinent part: "Whoever commits the crime of aggravated criminal damage to property shall be fined not more than ten thousand dollars, imprisoned with or without hard labor for not less than one nor more than fifteen years, or both." LSA–R.S. 15:529.1(1) states, "If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." In the present case, "not less than one-half the longest term" is 7 ½ years and "not more than twice the longest term" is 30 years.

In the present case, the record reflects that defendant has an extensive criminal history and was on home incarceration for possession of marijuana and a firearm at the time of the incident at issue on appeal. At defendant's sentencing hearing, the trial judge noted the seriousness of the crime at issue specifically finding that is was clearly foreseeable that defendant could have caused bodily injury to Detective Senior when he hit the officer's vehicle. At trial, defendant testified that he was frightened by the approach of the unmarked vehicles and his immediate reaction was to seek escape to save his life. Defendant further testified that he previously witnessed the murder of an individual in his car with his family and the approach of the unmarked vehicles raised anticipation of such an event. At the sentencing hearing, the trial judge discussed the credibility of defendant's testimony as well as the testimony of Nikkia Nickles and stated:

[I]t simply doesn't wash with this Court to suggest that Mr. Carter, who has an admitted criminal history, who admits to being apparently on house arrest, who admits to voluntarily absenting himself from the very arrested place he's supposed to remain, a fellow who would share with us his history of experience which made him nervous, which might explain his panic. I find none of that to be persuasive in terms of mitigation.

Quite the contrary, the evidence coupled with the almost complete unworthiness of belief attributed to the mother of Mr. Carter's son makes me think that they knew exactly or he knew exactly where he was, what was happening and intended not to be stopped by any means.

For the reasons discussed above, we find the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive. Considering the trial court's careful review of the testimony presented, the serious nature of the offense, and defendant's extensive criminal history, we find the trial judge did not abuse his wide discretion in sentencing defendant to twenty years as a second felony offender.[68]

To the extent that petitioner is now reasserting his claim that the state district court failed to comply with article 894.1, that claim simply is not cognizable in a federal habeas corpus proceeding. See, e.g., Butler v. Cain, 327 F. App'x 455, 457 (5th Cir. 2009) ("[Petitioner] also argues that the trial court erred in imposing the statutory maximum sentence of life imprisonment

---

[68] Carter, 96 So.3d at 1291-93; St. Rec. Vol. 4 of 10, 5th Cir. Order, 11-KA-758, 5/31/12.

without providing sufficient reasons as required by La. Code Crim. Proc. art. 894.1(C). His claim that the trial court violated state law is not cognizable in this federal habeas proceeding."); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ("Haynes also challenges the state court's failure to comply with La. Code Crim. Proc. art. 894.1, which requires courts to state for the record the reasons and factual bases for imposing a sentence, but a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus."); Quezada v. Avoyelles Correctional Center, Civ. Action No. 15-781, 2015 WL 5061230, at *27 (E.D. La. Aug. 17, 2015), certificate of appealability denied, Quezada v. McCain, No. 15–31052, 2017 WL 3895056 (5th Cir. Apr. 4, 2017); Pierre v. Radar, Civ. Action No. 11-55, 2012 WL 3026790, at *6 (E.D. La. June 18, 2012), adopted, 2012 WL 3027934 (E.D. La. July 24, 2012).

Similarly, any other claim that petitioner's sentence is excessive or otherwise inappropriate under Louisiana law likewise is not cognizable in this federal proceeding. Federal habeas corpus relief is available only to correct violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, a federal habeas court will not review the legality of a petitioner's sentence under state law. See, e.g., Nyberg v. Cain, Civ. Action No. 15-98, 2015 WL 1540423, at *12 (E.D. La. Apr. 7, 2015), certificate of appealability denied, 15-3033 (5th Cir. Apr. 1, 2016); Phillips v. Cain, Civ. Action No. 13-5868, 2014 WL 4425751, at *10 (E.D. La. Sept. 8, 2014), adopted, 2014 WL 5080246 (E.D. La. Sept. 26, 2014); Brunet v. Goodwin, Civ. Action No. 12-1974, 2013 WL 623505, at *12 (E.D. La. Jan. 22, 2013), adopted, 2013 WL 619278 (E.D. La. Feb. 19, 2013).

As a federal issue considered under the AEDPA standard, an excessive sentence claim presents a question of law. Chatman v. Miller, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); Davis v. Cain, 44 F. Supp.2d 792, 798 (E.D. La. 1999); Jones v. Kaylo, No. 99-

0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999). Therefore, this Court must determine whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987); see Turner v. Cain, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. 1999) (Table, Text in Westlaw) (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence); accord Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing Haynes, 825 F.2d at 923-24). A sentence within statutory limits will not be upset by a federal habeas court, unless it is grossly disproportionate to the gravity of the offense. Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 291-92 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,' " a court will consider (a) the sentences imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the same offense in other jurisdictions. Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996) (quoting Harmelin, 501 U.S. at 1005) (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)); United States v. Gray, 455 F. App'x 448, 449-50 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010).

If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished. United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997), overruled in part on other grounds, United States v. O'Brien, 560 U.S. 218, 234-35 (2010) (as recognized in United States v. Johnson, 398 F. App'x 964, 968 (5th Cir. 2010)). As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly

rare" and constitutional violations are sustained only in "extreme" or "extraordinary" cases. Ewing v. California, 538 U.S. 11, 22 (2003) (quotation and citations omitted); Lockyer v. Andrade, 538 U.S. 63, 73, 77 (2003) (quotation and citations omitted).

Louisiana law provides that a person convicted of aggravated criminal damage to property shall be imprisoned at hard labor for not less than one year or more than fifteen .years. La. Rev. Stat. § 14:55. Louisiana's habitual offender provision provides, that for a second offense, the "sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." La. Rev. Stat. § 15:239.1(A)(1). Thus, the sentencing range for a second felony offender with an underlying conviction for aggravated criminal damage to property is seven and one-half years to thirty years. Id.; La. Rev. Stat. § 14:55. Carter's sentence of imprisonment of twenty years was within the statutory range. Thus, this Court will consider proportionality when compared with sentences imposed in similar cases.

The United States Supreme Court has stated that " '[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.' " Ewing, 538 U.S. at 23 (quoting Harmelin, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. Id., 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005).

While the state trial court did not give specific reasons to support the sentence imposed, it stated at the conclusion of trial that it was clearly foreseeable that petitioner could have caused

bodily injury to the detective officer.[69]  The court further noted that petitioner had a prior criminal history and was on house arrest at the time of the incident.[70]

A survey of Louisiana cases in the public domain establishes that Carter's sentence was not out of line with sentences imposed upon similarly situated defendants.  See e.g., State v. Lacayo, No. 2010 KA 1119, 2011 WL 2135143 (La. App. 1st Cir. Feb. 11, 2011) (thirty year sentence imposed on a second felony offender who committed aggravated criminal damage to property); see also State v. Shaw, 969 So.2d 1233(La. 2007) (thirty year sentence for third felony offender who committed aggravated criminal damage to property).

Carter has not shown that his sentence was grossly disproportionate or unconstitutionally excessive under the circumstances of his case or in comparison with other similar cases in Louisiana.  The state court's denial of relief on this issue was neither contrary to established Supreme Court case law nor an unreasonable application of Supreme Court precedent.  Carter is not entitled to relief on this claim.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Robert C. Carter be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n,

---

[69] St. Rec. Vol. 4 of 10, Trial Transcript, p. 99-101, 2/23/1.
[70] Id., at p. 101.

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[71]

    New Orleans, Louisiana, this  25th day of October, 2018.

**DANIEL E. KNOWLES, III**
      **UNITED STATES MAGISTRATE JUDGE**

---

[71] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.